SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| JUAN PICASO and MARIBEL PICASO, husband and wife, individually and as surviving parents of BENJAMIN PICASO, deceased, | ) ) ) ) | Arizona Supreme Court No. CV-07-0154-PR |
| Plaintiffs/Appellants, | ) ) ) | Court of Appeals Division Two No. 2 CA-CV 05-0174 |
| v. | ) ) | Pima County Superior Court |
| TUCSON UNIFIED SCHOOL DISTRICT, | ) ) | No. C20022430 |
| Defendant/Appellee. | ) ) ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Pima County
The Honorable Richard S. Fields, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division Two
214 Ariz. 462, 154 P.3d 364 (App. 2007)

**VACATED**

_____

COPPLE, BOEHM & MURPHY, P.C.                                    Phoenix
     By   Steven D. Copple
          Scott E. Boehm
Attorneys for Juan Picaso and Maribel Picaso

MESCH, CLARK & ROTHSCHILD, P.C.                                 Tucson
     By   Richard Davis
          Gary J. Cohen
Attorneys for Tucson Unified School District

_____

**H U R W I T Z**, Justice

**I.**

¶1        On September 24, 2001, 14-month-old Benjamin Picaso was struck and killed by a Tucson Unified School District ("TUSD") school bus.  In 2003, Benjamin's mother, Maribel Picaso, pleaded guilty to misdemeanor child abuse.  The plea agreement stipulated that Maribel's negligence had placed Benjamin in the situation that led to his death.[1]

¶2        The case before us is a wrongful death action brought by Maribel and her husband, Juan Picaso,[2] against TUSD.  The

---

[1]    The plea agreement provided:

> AMENDED COUNT ONE: (CHILD ABUSE, NON-DEATH or SERIOUS PHYSICAL INJURY, A CLASS ONE MISDEMEANOR)
>
> On or about the 24TH day of September, 2001, MARIVEL [sic] PICASO-ATILANO, having care or custody of BENJAMIN PICASO, committed child abuse by criminally negligently causing or permitting him, a child less than eighteen years of age, to be placed in a situation where he [sic] person or health was endangered, to wit: resulting in the death of the victim, in violation of A.R.S. §§ 13-3623(B)(3), 13-603, 13-701, 13-702, 13-801, 13-804 and 13-811.

Maribel was originally charged with felony child abuse, but the more serious charges were dropped as part of the plea agreement. With the agreement of the state, the superior court imposed no sentence other than the judgment of conviction in return for the guilty plea.

[2]    Juan was also originally charged with felony child abuse, but these charges were later dropped.

central issue below was the effect of Maribel's plea on this suit.

¶3        TUSD filed a motion in limine in the wrongful death action seeking to "preclud[e] Maribel Picaso from denying the essential allegation of her guilty plea."  The superior court granted the motion, relying on Arizona Revised Statutes ("A.R.S.") § 13-807 (2007).  That statute provides that "[a] defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding brought by the victim or this state against the criminal defendant the essential allegations of the criminal offense of which he was adjudged guilty."[3]  The trial court rejected the plaintiffs' argument that this statute applies only when the convicted party is a *defendant*, rather than a *plaintiff*, in a subsequent civil suit.

¶4        After a defense verdict, the Picasos moved for a new trial, again arguing that the superior court had improperly relied on § 13-807 in granting the motion in limine.  TUSD argued in response that the doctrine of issue preclusion (formerly referred to as "collateral estoppel") also supported the trial court's ruling.  The superior court denied the new

---

[3]    During the plea colloquy, Maribel claimed that she entered the guilty plea "to help [her] children."  Her counsel argued below that one of her other children had unlocked the front door of her home and that she wanted to avoid a criminal trial in which she might have to blame that child for Benjamin's death.

3

trial motion, reasoning that "[w]hether the Court's evidentiary ruling was characterized as the application of A.R.S. § 13-807 or simply the application of [issue preclusion], the effect of the ruling was to properly focus the jury's attention upon the relative actions of the parties and assess degrees of fault for those actions."

¶5      The court of appeals reversed and remanded for a new trial. *Picaso v. Tucson Unified Sch. Dist.*, 214 Ariz. 462, 154 P.3d 364 (App. 2007). The panel first held that § 13-807 "cannot possibly apply here" because "Maribel, the defendant in the prior criminal proceeding, had no civil action brought against her," and "[t]he statute by its language applies only if the criminal defendant is also later the civil defendant." *Id.* at 465 ¶ 9, 154 P.3d at 367. The court also rejected TUSD's argument that the guilty plea had issue preclusive effect. Although noting that "[c]ourts in other jurisdictions are divided on whether issue preclusion should prevent a party from denying the essential elements of a guilty plea in a later civil proceeding based on the same occurrence that led to the plea," *id.* at 467 ¶ 18, 154 P.3d at 369, the court of appeals adopted the position of the Restatement (Second) of Judgments "that a guilty plea in a criminal case should not have preclusive effect in later civil litigation because no actual litigation occurs when a criminal defendant pleads guilty," *id.* at ¶ 20 (citing

4

Restatement (Second) of Judgments § 27 cmt. e & § 85 cmt. b (1980)).

¶6     We granted review because whether a guilty plea has common law preclusive effect in a later civil proceeding is an issue of first impression in this state.[4]  *See* ARCAP 23(c)(3). We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.  Application of issue preclusion is an issue of law, which we review de novo. *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223 ¶ 8, 62 P.3d 966, 968 (App. 2003).

## II.

¶7     The parties do not dispute that Maribel's guilty plea was properly admitted into evidence in the subsequent civil suit.  *See* Ariz. R. Evid. 801(d)(2) (governing the statements of parties); *cf.* Ariz. R. Evid. 803(22) (governing evidence of conviction of a crime punishable by imprisonment in excess of one year).  Rather, the question on which the Picasos and TUSD divide is whether the guilty plea also has preclusive effect in the wrongful death suit with respect to the issue of Maribel's negligence.

¶8     As the court of appeals noted, this issue has divided commentators and the courts.  A number of opinions and authorities have adopted the position of the Restatement

---

[4]     TUSD has now abandoned any reliance on § 13-807.

5

(Second) of Judgments that guilty pleas have no issue preclusive effect in later civil litigation because no issues have actually been litigated. *See, e.g., Mrozek v. Intra Fin. Corp.*, 699 N.W.2d 54, 63 ¶ 21 (Wis. 2005); *Rawling v. City of New Haven*, 537 A.2d 439, 445 (Conn. 1988); *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 848 (Md. 1975); *Glen Falls Group Ins. Corp. v. Hoium*, 200 N.W.2d 189, 192 (Minn. 1972); 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4474.1 (2007); David L. Shapiro, *Should a Guilty Plea Have Preclusive Effect?*, 70 Iowa L. Rev. 27, 28 (1984). Other courts and commentators, however, have rejected the Restatement rule, generally taking the view that the safeguards surrounding the entry of a guilty plea, which are designed to make the conviction reliable enough to deprive a defendant of his freedom, make the conviction preclusive as to the elements of the offense in a civil context. *See, e.g., Butler v. Mooers*, 771 A.2d 1034, 1037 ¶ 8 (Me. 2001); *Ray v. Stone*, 952 S.W.2d 220, 224 (Ky. Ct. App. 1997); *State ex rel. Leach v. Schlaegel*, 447 S.E.2d 1, 4 (W. Va. 1994); *Ideal Mut. Ins. Co. v. Winker*, 319 N.W.2d 289, 296 (Iowa 1982); Geoffrey C. Hazard, Jr., *Revisiting the Second* Restatement of Judgments*: Issue Preclusion and Related Problems*, 66 Cornell L. Rev. 564, 578 (1981).

¶9    Although we granted review to address this interesting issue, our review of the record reveals that this is not the

6

appropriate case in which to do so. An appellate court must determine whether the judgment, not the reasoning, of the superior court was correct. *Gary Outdoor Adver. Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982). Even if we assume arguendo that Maribel's guilty plea here had no preclusive effect, the result at trial in this case would not have changed.

¶10    The trial judge properly instructed the jury that the threshold question was whether TUSD was at all at fault for Benjamin's death. If the jury did not so conclude, the judge instructed, a defense verdict was required without more deliberation:

> Plaintiffs must prove, one: The defendant was at fault; two: Plaintiffs were injured; and three: Plaintiffs' damages. . . . If you find the defendant was not at fault, then your verdict must be for defendant.

¶11    The jury was instructed that only if it found TUSD at fault for Benjamin's death should it "*then* consider the defendant's claim that plaintiff, Maribel Picaso," was also at fault. (Emphasis added.) The jury was given three forms of verdict — a defense verdict, a plaintiffs' verdict with no comparative negligence on the part of Maribel, and a plaintiffs' verdict with the damages reduced in accordance with Maribel's comparative negligence. The jury returned a unanimous defense verdict.

7

¶12        The jury thus necessarily concluded that TUSD was simply not at fault for Benjamin's death.  The trial court rulings about which the Picasos complain on appeal all concern the alleged comparative negligence of Maribel for that death. Because the superior court instructed the jury that it was only to consider Maribel's comparative negligence in the event that it also found TUSD at fault, any error below as to the preclusive effect of the guilty plea could not have affected the jury's verdict.[5]    We therefore leave for another day the preclusive effect of guilty pleas on subsequent civil proceedings.

---

[5]    The superior court instructed the jury that "it is already established in this case that Maribel Picaso negligently permitted her son, Benjamin, to be placed in a situation where his person or health was endangered, and that such negligence was a cause of Benjamin's death." The jury was told, however, that "[w]hether such admissions should be applied to find Maribel Picaso at fault, and whether such fault should reduce her full damages, is left in your discretion." The instructions thus did not give the guilty plea true preclusive effect, but rather treated it simply as an evidentiary admission.

The Picasos complain that although the printed final jury instructions describe Maribel's negligence as "a" cause of Benjamin's death, the transcript of the proceedings quotes the judge as saying it was "the" cause. TUSD claims that this is a transcription error, and notes that preliminary jury instructions referred to "a" cause. We need not resolve this dispute. The Picasos did not object to the final jury instructions on this point, and it is undisputed that the jury was supplied with the printed instructions during its deliberation. Moreover, the instruction at issue occurred after the jury was told that it should consider Maribel's negligence only if it first found TUSD at fault.

8

### III.

¶**13**　　　For the foregoing reasons, we vacate the opinion of the court of appeals and affirm the judgment of the superior court.[6]

_____
                    Andrew D. Hurwitz, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice

---

[6]　　Because it reversed on other grounds, the court of appeals did not consider the Picasos' argument that the preliminary jury instruction, which stated that Maribel's negligence was "a cause" of Benjamin's death, violated Article 18, Section 5 of the Arizona Constitution. _Picaso_, 214 Ariz. at 464 ¶ 1 n.1, 154 P.3d at 366 n.1.　We need not remand on this point, however, given the jury's conclusion that TUSD had no fault in the death. Whether Maribel was also at fault is a moot issue.